HOLMES *v.* STEAMER CHIEFTAIN and owners.

Proceedings under the stat. of 25 March, 1840, to recover damages, and the penalty imposed
by that statute, on the master and owners of any steamer, or other vessel, on board of which
any slave shall have been found without the written consent of his owner, may be *in rem.*
The statute having granted a privilege upon the steamer or vessel for the damages and
penalty, the omission to state the names of the master and owners will not prevent the
plaintiff from obtaining judgment and execution. C. P. 290, 291. But where the master
and owners appear and disclose their names, and except to the petition on the ground of its
not having stated their names, plaintiff may amend by making them parties, and he may
have judgment both *in rem* and *in personam.*

Action by the owner of a slave against a steamer, to recover damages and the penalty
imposed by the stat. of 25 March, 1840, for carrying a slave out of the State, contrary to
law. Plaintiff having offered in evidence a bill of sale and the testimony of a witness, both,
were excluded on the ground that they related to a slave named *Granville,* while the slave
alleged to have been taken out of the State was stated in the petition to be named *George.*
A new trial having been applied for, on the ground that plaintiff's attorney was not aware,
at the time of instituting suit, that the slave was known by another name, it was granted,
with leave to amend the pleadings, the judge believing, from the testimony, that the slave
was known by the two names, and that, with the excluded testimony, plaintiff could estab-
lish his claim. *Held,* that the new trial was correctly allowed, and that the amendment of
the pleadings did not alter the substance of the demand.

APPEAL from the District Court of the First District, *Buchanan,* J.
Perin, for the plaintiff. *Van Matre,* for the appellants.

The judgment of the court was pronounced by

KING, J. This action was instituted to recover $600 damages, and $500 the
penalty of the statute of 1840, for an alleged transportation of a slave out of the
State, upon the steamboat Chieftain, of which the defendants are the owners.
The cause was submitted to a jury, who returned a verdict in favor of the plain-
tiff, for $300 damages, and for $500, the fine prescribed by the act, in conformity
with which a judgment was rendered, from which the defendants have ap-
pealed.

The plaintiff has moved to dismiss the appeal. The conclusion at which we
have arrived upon the merits, renders it unnecessary to consider this motion.

The defendants assign as errors apparent upon the face of the record :

1st. That the court erred in permitting the plaintiff to amend his petition by
setting forth the names of the defendants, after an exception had been filed ob-
jecting to the omission as a defect.

2d. In granting a new trial, upon the suggestion of the attorney of the plain-
tiff that he had, through mistake, described the slave abducted by the name of
*George,* instead of *Granville.*

3d. In permitting the plaintiff to amend his petition by stating the name of
the slave to be *Granville,* instead of *George* as originally alleged, which amend-
ment it is averred changed the substance of the action.

The plaintiff appears to have founded his action upon the statute of 1840,
which grants to owners a privilege upon vessels on which slaves are found in vio-
lation of its provisions, for both the damages and the fine ; and he commenced his
proceedings by a provisional seizure, alleging in his petition that the owners of
the boat were unknown to him. The proceedings being *in rem,* it was
not necessary that the names of the defendants should have been ascertained

before commencing suit. This presented no impediment to his proceeding to final judgment and execution. Code of Pract. arts. 290, 291. Bul. & Curry's Dig. p. 847. The defendants, however, chose to appeal, and, in their exception to the petition for this alleged defect, disclosed their names, of which the plaintiff availed himself to amend his pleadings, which the judge did not err in permitting to be done. The nature of the action was not changed ; the exception taken did not tend to the dismissal of the suit ; and the plaintiff had a right to a judgment *in personam* as well as *in rem.*

HOLMES<br>*v.*<br>STEAMER<br>CHIEFTAIN.

There were two trials of the cause in the lower court. Upon the first, the act of sale of the slave in question was offered in evidence, but was objected to and excluded, on the ground that the name of the slave was there stated to be *Granville,* The testimony of two witnesses, deemed important, was also rejected, because it related to a slave named *Granville.* There was a verdict for the defendants. A motion was made for a new trial, upon the ground, among others, that the counsel of plaintiff was not aware, when instituting the suit, that the slave was known by another name than that stated in the petition ; that he had been surprised by the objection made to the testimony which he had offered ; and that its exclusion had prevented the plaintiff from establishing his claim.

The judge, in assigning his reasons for granting a new trial, expresses his belief, founded upon an examination of the testimony, that *George* and *Granville* were one and the same person, known by those different names.

He appears to have considered that, with the aid of the excluded testimony, which could only be admitted under amended pleadings, the plaintiff could establish his right to recover. With those convictions upon his mind, he exercised soundly the discretion vested in courts of the first instance, in granting the new trial. 10 La. 409. The amendment did not alter the substance of the demand ; it had for its object the furtherance of justice, and was properly permitted.

Upon the merits, we think that the evidence supports the verdict of the jury. An effort was made to impeach the veracity of the witness on whom the plaintiff mainly relies. This person was examined at two different times under commissions, and it is contended that his statements on those occasions exhibit irreconcileable contradictions. After a careful examination and comparison of his answers, we find no discrepancies which may not be fairly ascribed to the natural infirmities of memory, or such as might not occur with the most truthful person testifying at different times. His narrative bears the impress of truthfulness, and, in those instances in which he relates circumstances within the knowledge of other witnesses, his testimony is substantially corroborated. The question of his credibility was made before the jury, and they considered him worthy of belief.

It is contended that the evidence does not show that the slave was on board of the boat within the limits of this State, without the written consent of the owner. *Haile,* one of the witnesses, states that, he embarked at Bayou Sara late in the evening, and saw the slave on board the first or second day after, and that he continued on board until the witness landed in the State of Kentucky. Another witness says that, he had occasion to travel on the Chieftain in 1842, and that the time she then consumed in running from Bayou Sara to the northern limit of the State was nearly forty-eight hours. The overseer of the plaintiff states that the slave had absconded from his owner's plantation in the parish

18

HOLMES
*v.*
STEAMER
CHIEFTAIN.

of Point Coupée, and had been absent several weeks previous to the date of his alleged abduction. These facts were submisted to the jury, who inferred from them that the slave was upon the boat within the limits of the State, without the owner's consent; and the evidence does not authorise us to disturb their verdict.                                          *Judgment affirmed.*