943 So.2d 1235 (2006)
Jennifer A. MITCHELL and Linda Laborde
v.
Dr. C. Edward GENO, Ochsner Foundation Hospital and Clinic, Dr. Richard McConnell, Dr. Carl J. Lavie, J. Kitch, R.N., N.P., Dr. Kathryn Elmore, Dr. Kevin McKinley, Dr. Stephen Jenkins and Ochsner Clinic Foundation.
No. 2006-CA-0243.
Court of Appeal of Louisiana, Fourth Circuit.
October 18, 2006.
Rehearing Denied December 15, 2006.
*1236 Roy Raspanti, Metairie, LA, for Plaintiffs/Appellants.
Don S. McKinney, John L. Fontenot, Adams and Reese, L.L.P., New Orleans, LA, for Defendants/Appellees.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge LEON A. CANNIZZARO JR.).
PATRICIA RIVET MURRAY, Judge.
Plaintiffs, Jennifer Mitchell and Linda Laborde, appeal the granting of a motion for summary judgment dismissing their medical malpractice action against three of the individual defendants, namely Dr. Richard McConnell, Dr. Kathryn Elmore, and Dr. Kevin McKinley. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
Plaintiffs, daughters of Odrey Mitchell, filed the instant action against Ochsner Hospital, six physicians, and one nurse alleging that Mr. Mitchell's death from an intracerebral hemorrhage on July 10, 2001 was the result of the defendants' negligence. Specifically, plaintiffs alleged the defendants breached the standard of care by administering anticoagulant medications to Mr. Mitchell without first conducting a CT scan, despite evidence that Mr. Mitchell had undergone a recent trauma (he had fallen and bruised his chest).
*1237 In response to interrogatories propounded by the defendants, the plaintiffs listed Dr. Terrence Shaneyfelt as their only expert witness. The defendants deposed Dr. Shaneyfelt on June 14, 2004. On October 4, 2004, three of the physician defendants, namely Dr. Richard McConnell, Dr. Kevin McKinley, and Dr. Kathryn Elmore, moved for summary judgment on the basis that the plaintiffs would not be able to meet their burden of proof at trial on account of a lack of expert testimony to show a breach in the standard of care by either of the three physicians. Attached to the motion for summary judgment were excerpts from Dr. Shaneyfelt's deposition. In these excerpts, Dr. Shaneyfelt testified that based upon his review of Mr. Mitchell's medical records, he could not say that Dr. McConnell, an emergency room physician; Dr. McKinley, a neurologist; or Dr. Elmore (whose specific role in the treatment of Mr. Mitchell was unclear from the deposition excerpts) had breached the applicable standard of care.
In opposition to the motion for summary judgment, plaintiffs submitted three affidavits and additional excerpts from Dr. Shaneyfelt's deposition. In these excerpts, Dr. Shaneyfelt indicated repeatedly that the size of the bruise on Mr. Mitchell's chest, which size was not noted on any of the medical records, would affect his opinion as to whether certain doctors had breached the standard of care. In one of the submitted affidavits, Jennifer Mitchell, Odrey Mitchell's daughter, averred that on July 3, 2001, she had observed a bruise "the diameter of a softball or grapefruit" located in the upper middle area of her father's chest. In the second affidavit, Dr. Shaneyfelt averred that in view of the affidavit of Jennifer Mitchell and the information she had provided regarding the size of the bruise, he now believed that the administration of anticoagulant drugs to Odrey Mitchell had been contra indicated. Dr. Shaneyfelt specifically averred that Dr. McConnell should have seen the size of the bruise on Mr. Mitchell when he took his physical, and that Dr. McKinley should have seen it "during the physical examination prior to the heart catheterization which he performed on Mr. Mitchell." Based on these two assumptions, Dr. Shaneyfelt opined that Dr. McConnell and Dr. McKinley had fallen below the standard of care when they had allowed anticoagulant drugs to be administered to Mr. Mitchell. The third affidavit submitted by the plaintiffs was that of Dr. Gerald Liuzza, a member of the medical review panel that had rendered a unanimous decision in favor of the defendant physicians; in his affidavit, dated November 11, 2004, Dr. Liuzza merely stated that "after further reflection" he dissented from the opinion of the panel.
Defendants submitted a reply to the opposition to their motion, to which reply they attached additional excerpts from Dr. Shaneyfelt's deposition testimony. In these excerpts, Dr. Shaneyfelt, an internist, testified that he was not board certified in emergency medicine; in addition, when asked whether he believed he was qualified to give an opinion about the standard of care for an emergency room physician in 2001, Dr. Shaneyfelt responded, "No."
The trial court heard the motion for summary judgment on November 12, 2004. At the conclusion of the hearing, the trial court granted the defendants' motion. On November 29, 2004, he trial court signed a written judgment granting the motion and dismissing with prejudice the plaintiffs' claims against Dr. McConnell, Dr. McKinley, and Dr. Elmore. The plaintiffs filed a motion for new trial, which was heard and denied on February 4, 2005. The trial court signed a judgment to this effect on February 22, 2005. The plaintiffs now appeal *1238 the granting of the motion for summary judgment.
APPLICABLE LAW
According to La. C.C.P. art. 966(B), summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a mater of law." Part C of the article further states, in pertinent part:
(C)(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Johnson v. State of Louisiana/University Hospital, XXXX-XXXX, p. 2 (La.App. 4 Cir. 1/16/02), 807 So.2d 367, 369 (citing Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 c/w 99-2257 (La.2/29/2000), 755 So.2d 226, 230). The supporting documentation submitted by the parties should be scrutinized equally, and there is no longer any overriding presumption in favor of trial on the merits. Id.
In a medical malpractice action, such as the instant case, the plaintiffs have the initial burden of proving that the defendants either lacked or did not exercise "the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians" who are "actively practicing in a similar community or locale and under similar circumstances." See La. R.S. 9:2794 (West 2000). Additionally, under the statute the plaintiffs must prove causation, i.e., that they suffered injuries they would not otherwise have incurred as a proximate result of the defendants' breach of the applicable standard of care.
Moreover, because of the complex medical and factual issues involved, a plaintiff generally cannot sustain his burden of proof in a medical malpractice action without the opinion of one or more qualified medical experts. Johnson v. State of Louisiana/University Hospital, supra, p. 5, 807 So.2d at 371. Therefore, unless the case involves some obvious act from which a lay person can infer negligence, such as amputating the wrong limb or leaving a sponge in a patient's body, the absence of expert testimony as to any of the essential elements of the plaintiff's malpractice claim will preclude the imposition of liability. Johnson, supra.
DISCUSSION OF LAW AND FACTS
In the instant case, to prevail on the motion for summary judgment, defendants had to show that the plaintiffs lack factual support for an essential element of their claim. As this case does not involve an obvious act from which a lay person can infer negligence, the only way for the plaintiffs to show that the defendant physicians breached the applicable standard of care is by expert medical testimony. At the time the motion for summary judgment was decided, Dr. Shaneyfelt was listed *1239 as the plaintiffs' sole expert.[1] Therefore, unless Dr. Shaneyfelt's testimony, taken at face value, establishes that each of the three defendants breached the particular standard of care applicable to him or her, the defendants are entitled to summary judgment.
Considering the record, we find that the trial court properly granted summary judgment dismissing the three defendants. With regard to Dr. Elmore, there clearly is no issue, as there is no evidence that Dr. Shaneyfelt ever changed his opinion from his original deposition testimony, at which time he testified that he did not believe Dr. Elmore had breached the applicable standard of care. With regard to the other two defendants, Dr. McConnell and Dr. McKinley, Dr. Shaneyfelt stated in his affidavit that he had altered his original opinion based upon the statement of the decedent's daughter that she had observed a large bruise on her father's chest, and that his final opinion was that these two physicians had violated the standard of care by failing to notice the bruise during their respective examinations of Mr. Mitchell. However, we do not find this change of opinion to be relevant in light of certain other statements made by Dr. Shaneyfelt in his deposition, which statements he did not later retract.
Specifically, with regard to Dr. McConnell, Dr. Shaneyfelt testified that he himself did not believe he was capable of giving an opinion as to the standard of care for an emergency room physician in 2001. Plaintiffs offered nothing to refute this testimony. In our view, this testimony by Dr. Shaneyfelt renders meaningless his subsequent opinion as to Dr. McConnell's negligence. Plaintiffs therefore failed to controvert defendants' assertion that plaintiffs lacked qualified expert testimony to prove their case against Dr. McConnell.
With regard to Dr. McKinley, deposition excerpts submitted by the defendants show that Dr. Shaneyfelt twice agreed that Dr. McKinley was a neurologist who saw Mr. Mitchell only after the brain hemorrhage had been identified. Dr. Shaneyfelt also agreed that Jeff Kitch was the nurse-practitioner who performed the initial cardiology exam on Mr. Mitchell, and that Dr. Lavie was the cardiologist who handled Mr. Mitchell's case; neither Mr. Kitch nor Dr. Lavie are part of the motion for summary judgment considered herein. Finally, Dr. Shaneyfelt testified that he himself was not board certified in either neurology or cardiology. In light of this testimony, Dr. Shaneyfelt's subsequent affidavit opining: "Dr. McKinley should have seen it [the chest bruise] during the physical examination prior to the heart catheterization which he performed on Mr. Mitchell, which heart catheterization entailed the administration of Heparin [an anticoagulant drug]," does not make sense. This statement, which Dr. Shaneyfelt uses as the basis for his opinion that Dr. McKinley violated the standard of care, conflicts irreconcilably with Dr. Shaneyfelt's earlier acknowledgement that Dr. McKinley is the neurologist who saw Mr. Mitchell only after the heart catheterization had been performed, not the doctor who performed the catheterization or the nurse who performed the exam prior the catheterization. The plaintiffs have presented no evidence to refute that Dr. McKinley is a neurologist, which fact is supported by the record as a whole. Because the opinion as to Dr. McKinley's *1240 negligence given by Dr. Shaneyfelt in his affidavit is based upon completely unsupported, nonexistent facts, it is inherently unreliable. Without Dr. Shaneyfelt's opinion, plaintiffs have not presented sufficient evidence that they will be able to meet their burden of proof at trial on this issue.
The plaintiffs argue on appeal that summary judgment was wrongly granted because the trial court is not allowed to evaluate credibility when deciding a motion for summary judgment. See Johnson v. State/University Hospital, supra, p. 3, 807 So.2d at 369. This argument is misplaced because Dr. Shaneyfelt is an expert witness. Even if Dr. Shaneyfelt's credibility is assumed, to successfully defeat the motion for summary judgment with expert testimony, plaintiffs also had to show that their expert was qualified to give the opinions he gave and that his opinions had some factual basis in the record. However, in the instant case, Dr. Shaneyfelt's own testimony reveals that he was not so qualified, and the testimony itself contradicts the very facts upon which his later opinion is supposedly based. Under these circumstances, we must conclude that the plaintiffs failed to present sufficient evidence to defeat the motion for summary judgment. Therefore, the trial court did not err by granting the motion.
CONCLUSION
Accordingly, for the reasons stated, we affirm the judgment of the trial court granting summary judgment and dismissing plaintiffs' action against Dr. Kathryn Elmore, Dr. Richard McConnell, and Dr. Kevin McKinley.
AFFIRMED.
NOTES
[1] We do not consider the affidavit of Dr. Liuzza to be significant because Dr. Liuzza was not listed as an expert who would testify at trial, nor was he deposed. Moreover, his affidavit gives no reason for his change of opinion.